



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES MCDANIEL

VERSUS

DIAMOND OFFSHORE DRILLING,
INC. AND CANDY FLEET
CORPORATION

FILED: _____

CIVIL ACTION

NO: 00-0027

SECTION "R"

MAG. (4)

_____
DEPUTY CLERK

## PRE-TRIAL ORDER

1.

The Pre-Trial Conference in this matter was held before the
Honorable Sarah S. Vance, United States District Judge, on
November 15, 2001, at 3:00 p.m.

2.

**PRESENT**:

David A. Hilleren, T.A.
Billy Wright Hilleren
Hilleren & Hilleren, L.L.P.,
Post Office Box 9150
Mandeville, LA.  70470
(985) 893-5959
Representing Plaintiff, James McDaniel

Page -1-

DATE OF ENTRY

NOV 1 6 2001



Daniel E. Knowles, III, T.A. (#7760)
Brien J. Fricke (#20546)
2000 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2000
Telephone: (504) 569-2900
AND
BURKE & MAYER, Of Counsel
Attorneys for Candy Fleet Corporation

3.

### DESCRIPTION OF THE PARTIES

Plaintiff, James McDaniel, was employed by Diamond Offshore Services and was sent from the offshore rig on which he worked to defendant's vessel, M/V CANDY STORE, to assist in backloading equipment from the rig onto the deck of the vessel.

Candy Fleet Corporation is a Louisiana Corporation domiciled within the Eastern District.

4.

### STATEMENT OF JURISDICTION

a.   Jurisdiction exists under Diversity of Citizenship.

b.   More than $75,000.00 is involved in this case.

c.   Jurisdiction is under the Court's Admiralty and
     Maritime jurisdiction, 28 U.S.C. §1333.

5.

**PENDING MOTIONS**

Plaintiff has filed a Motion to Quash Records Deposition of Diamond Offshore Drilling, Inc.  Additionally, Diamond Offshore Drilling, Inc. has filed an objection to defendant's Subpoena Duces Tecum of videotapes and pictures of plaintiff in its possession.  A Motion in Limine to exclude the videotapes may be filed if defendant obtains possession of the films from Diamond Offshore.

6.

**MATERIAL FACTS**

**Plaintiff:**

On July 29, 1999, at approximately 5:00 a.m., plaintiff, James McDaniel, was working as a roustabout assigned to the Ocean Crusader No. 152, a drilling rig.  The rig was backloading equipment to defendant's crew boat, M/V CANDY STORE, using one of the OCEAN CRUSADERS' cranes.  James McDaniel was sent down from the rig to the crew boat to assist in the back loading operation during which a wire line unit was being lowered by the crane. The mate at the wheel of the M/V CANDY STORE, attempting to hold the M/V CANDY STORE under the load being lowered, lost control of the vessel, and went under the rig.  While trying to regain control, the vessel struck the leg of the rig on two occasions.  According

to the engineer on the boat, the impacts were hard.  The impacts left three gashes, six to twelve inches long, in the port bow and bent the rail.  After the impacts occurred, the engineer told the mate that he didn't deserve to have a license.  In fact, the mate had a reputation of being a very poor boat handler, and his nickname around Candy Fleet was "Captain Crunch" because of boats and docks with which he had collided previously.  The mate was summarily relieved from the wheel by the captain who then accomplished the back loading operation.

James McDaniel was holding on to the rail at the time of the second impact and his body was jerked severely.  Although he finished the back loading operation, he felt tightness in his lower back and numbness in his legs upon his return to the OCEAN CRUSADER 152. He reported his injury to the safety representative on the rig, Randy Walton, and was given Ibuprofen.  James McDaniel was flown off the rig by helicopter which was sent out to pick him up.  The helicopter took him to Lake Charles Memorial Hospital where he was diagnosed as having a lumbar strain and sacrolitis bilaterally.  He was told to go to light duty status for five days, was given a back instruction sheet, and was told to follow up with his regular doctor if the pain persisted.  On August 2, 1999, James McDaniel was sent to the company doctor at the Westbank Surgical Clinic.  At this time, the diagnosis of

thoracic and lumbar strain was made and, he was placed on modified duty.  He was given Motrin, ice, and Flexeril.  On August 17, 1999, Mr. McDaniel was complaining of stiffness in his neck, hand, and back.  Dr. Wei decided that he should commence physical therapy, and if he had no improvement, obtain an MRI. On September 15, 1999, Dr. Wei discharged Mr. McDaniel to full duty and to return to clinic as needed.  On September 24, 1999, James McDaniel saw a general physician, Dr. David Roberts, because his pain was not improving.  He stated that he wanted a referral to a neurosurgeon, Dr. Harry Danielson.  Dr. Roberts referred him for an MRI of the low back which was reported as normal on October 3, 1999.  On December 29, 1999, at the referral of undersigned counsel, James McDaniel saw a neurologist, Dr. William Shepard Fleet, in Mobile to whom he complained of left leg numbness, throbbing neck, shooting pain into his head and behind his ears.  Dr. Fleet diagnosed cervical strain and possible lumbar radiculitis from nerve root contusion that would not show up on an MRI.  Dr. Fleet prescribed Vioxx, and ordered a cervical MRI.  Before the cervical MRI could be carried out, Mr. McDaniel was incarcerated for a fourth DUI.

From January to September or October of 2000, James McDaniel was confined to the Hancock County Justice Facility.  On June 7, 2000, while serving his sentence, the institutional physician saw

Mr. McDaniel for neck pain with positive findings of spasm which kept him awake at night. He also had tight shoulders. He was taken off work detail at the time. Upon discharge he sought additional medical treatment.

On November 8, Dr. Hoda, a chiropractor, referred Mr. McDaniel for an MRI of the cervical spine at Open MRI. He was found to have a diffuse disc bulge at C5-6 and C6-7 with a mild left sided neural foraminal encroachment at C5-6. Subsequently, on December 12, 2000, James McDaniel was seen by a neurosurgeon, Dr. Harry Danielson. Dr. Danielson noted the possibility of a herniated disc at L5-S1, and noted neck pain with headaches. He referred Mr. McDaniel for a cervical and lumbar myelogram. The myelogram and post-myelographic CT showed extruded disc at C5-6 and disc herniation at C6-7. Dr. Danielson proceeded with anterior cervical discectomies at C5-6 and C6-7 with a fusion at both levels involving donor bone and implantation of titanium plate and screws at these levels. Dr. Danielson has assigned James McDaniel at 15% whole body impairment on a permanent basis due to his injury. He has imposed permanent restrictions against doing work where he would have to look up, employ rapid head movements and lift above his shoulder level. Presently, he is limited to 35 pounds lifting (to shoulder level) which will increase to 60 pounds in a year. According to plaintiff's

vocational expert. Tom Stewart, this will not permit him to return to roustabout work offshore.  Due to the fact that Mr. McDaniel only has a tenth grade education, he will not be able to find replacement employment which pays him as much as he was earning in his roustabout position offshore.  He earned $32,000.00 in 1997, and nearly $40,000.00 in 1998.  His earnings loss according to Dr. Semoon Chang, an economist from the University of South Alabama, will amount to $659,543.39 after minimum wage offset.

Plaintiff has incurred medical expenses of $40,614.32 which have been paid by Diamond Offshore Drilling, Inc.  Diamond Offshore Drilling, Inc. has paid maintenance and advances of $10,687.32.  According to a settlement agreement between plaintiff and Diamond Offshore Drilling, Inc., Diamond Offshore Drilling, Inc. must be paid $51,301.68 as a first priority out of any recovery in this matter.  The parties will stipulate that plaintiff has incurred $40,614.32 in medical expenses in this matter.

B.   **Defendant's Statement of Material Facts:**

Plaintiff, James McDaniel, alleged an accident on July 29, 1999.  At that time, plaintiff was an employee of Diamond Offshore but was located aboard M/V CANDY STORE, a vessel owned and operated by Candy Fleet.  During an operation in which the

plaintiff was involved in the hooking and unhooking of cargo,
plaintiff claims that he was injured during a "collision" with
the jack-up rig, M/V OCEAN CRUSADER, the vessel to which he was
assigned by his employee.

The testimony and evidence will show that the plaintiff's
accident likely did not occur as alleged.  The plaintiff's
version of the accident is that his injury occurred the second
time the vessel contacted the rig and that the incidents occurred
because the individual piloting the vessel had lost control of
it.  He indicates that he was facing the stern of the vessel,
holding onto the cargo rack on the port side and was aware that
an impact would occur before it did.  He also indicates that he
did not "realize that he was hurt," completed his job aboard the
vessel and did not report his accident for several hours.
Plaintiff is vague as to exactly what caused him to be injured.
In fact, plaintiff has testified that he felt no pain whatsoever
until he was pulling on a tag line while loading a heavy basket
some five minutes after the "impact" in question.  Thus, it is
more probable than not that the plaintiff was injured, if at all,
during the loading of this basket rather than in the "impact."

Defendant contends that neither it nor its agents or
employees were in any way negligent or in any way caused the
injuries alleged by plaintiff, James McDaniel.  Rather, if the

injuries did occur as the plaintiff alleges, a fact which is in doubt, defendant contends that the injuries were solely and proximately caused by the failure of plaintiff himself, as he has admitted in his deposition that he is aware that the vessel was about to bump against the adjacent rig and failed to take proper precautions for his own safety.  Further, testimony of Candy Fleet employees will indicate that the vessel sustained only minor dents which were repaired in-house.

Neither is it exactly clear what injuries, if any, were sustained by the plaintiff.  Upon returning to the rig, the plaintiff filled out an accident report, in which his only complaints were "tightness" in his lower back along with some numbness in his legs.  He mentions nothing about neck or right shoulder pain.  Later that day, he was seen at the Lake Charles General Hospital emergency room at which time he reported "back" pain.  Again, there is no mention of neck or shoulder pain.

Plaintiff was initially diagnosed with a thoracic/lumbar strain by his treating physician despite the fact that his examinations revealed little or nothing.  Most recently, the plaintiff now claims that he suffered a neck injury in the accident for which he has undergone a two-level cervical fusion. However, the testimony and evidence will show that plaintiff had suffered neck and back injuries in an alcohol related automobile

accident in August of 1994 in which he was thrown from a vehicle. From November of 1998 until March of 1999, plaintiff was being treated by a chiropractor for neck and back pain. Notes of these visits indicate that plaintiff was still symptomatic in March of 1999. After the accident in question, plaintiff's complaints were limited to mid and low back pain, rather than any aggravation of his pre-existing neck complaints. Thus, it is obvious that any neck complaints that plaintiff suffers from, if any, are the result of recent trauma or the natural progression of the pre-existing injury dating from August of 1994.

Plaintiff's complaints following the accident in question focused on his mid and low back, for which he was being treated with medication and physical therapy. The testimony and evidence will show that this therapy was successful as plaintiff demonstrated full lumbar and cervical spine range of motion without any complaints of pain as of August 30, 1999. On this date, McDaniel informed his therapist that he wished to stop treatment. As his therapist believed that McDaniel had achieved his goals, he was discharged from therapy at that time. Several weeks later, on September 15, 1999, Dr. Richard Wei released McDaniel to full duty, discharging him from his care.

The testimony and evidence will show that the plaintiff had an alleged back sprain and a normal MRI prior to his extended

Page -10-

stay in prison.  It was only at the time of his incarceration for his fourth DUI, which began six months after the alleged injury in January, 2000 and lasted until October, 2000, that plaintiff's main complaints shifted to his neck.  It is submitted that, under these circumstances, plaintiff will indeed have a difficult burden to bear in proving that his neck problems were a direct result or reasonably probable consequence of the alleged accident in July of 1999.

Plaintiff's surgery was performed by Dr. Harry Danielson, a neurosurgeon practicing in Gulfport, Mississippi, who is not board certified due to the fact that he took his boards in the 1970's and failed them.  Through some extremely strained reasoning, Dr. Danielson attempts to relate the plaintiff's surgery to the accident which occurred more than one and one-half years earlier.  His testimony will be rebutted not only by the facts, but also by the testimony of Dr. Melvin Parnell.  However, even Dr. Danielson admits that a neck surgery should not prohibit the plaintiff from returning to his former employment.  When his extensive period of incarceration following the alleged accident is coupled with his ability to return to his prior employment, the plaintiff's wage claim is indeed small.  Plaintiff has, of course, failed to mitigate his damages by failing to perform any work since the alleged injury, despite that he had discussed

returning to work with Diamond Offshore even prior to his incarceration.

7.

**UNCONTESTED MATERIAL FACTS**

a.   Defendant, Candy Fleet Corporation, is a corporation doing business within the jurisdiction of this Honorable Court.

b.   On July 29, 1999, plaintiff, James McDaniel, was employed as a roustabout on the OCEAN CRUSADER 152 by Diamond Offshore Management Company;

c.   Defendant, Candy Fleet Corporation, was the owner and operator of the M/V CANDY STORE on July 29, 1999;

d.   M/V CANDY STORE was a vessel operating in navigational waters on July 29, 1999;

e.   James McDaniel was aboard the M/V CANDY STORE to assist in the back loading of equipment from the OCEAN CRUSADER 152 to the M/V CANDY STORE on July 29, 1999;

f.   The amount of medical expenses James McDaniel has incurred for treatment of his injuries is $40,614.32.

g.   Plaintiff was employed by Diamond Offshore Corporation at the time of his alleged accident.

h.   Plaintiff is not a Jones Act Seaman.

8.

## CONTESTED ISSUES OF FACT

a.   Whether defendant, Candy Fleet Corporation, was
     negligent in the navigation and operation of its
     vessel;

b.   Whether the M/V CANDY STORE was navigated and operated
     by an employee of defendant who was unskilled,
     incompetent, or unsafe.

c.   Whether defendant's mate lost control of the M/V CANDY
     STORE and collided with one of the legs of the OCEAN
     CRUSADER  152.

d.   Whether the magnitude of the impacts between the vessel
     and the leg of the rig was hard or severe;

e.   Nature and extent of damage to defendant's vessel;

f.   Nature of the wind, sea and current conditions;

g.   Whether James McDaniel was free from fault in the
     accident;

h.   Whether the impact of the vessel with the leg of the
     rig caused James McDaniel's injuries to his neck, mid-
     back, and low back;

i.    Nature and extent of James McDaniel's injuries;
      Nature and extent of disability and vocational loss to
      James McDaniel from his injuries;

g.    Whether James McDaniel has transferrable vocational
      skills;

h.    Nature and extent of James McDaniel's earnings prior to
      the injury;

i.    The amount of earnings lost and whether James McDaniel
      sustained a future earnings loss;

j.    Whether James McDaniel has experienced, and will
      continue to experience pain and suffering, mental
      anguish, loss of life's pleasures, disability and
      disfigurement;

k.    Nature and extent of future medical care.

l.    The negligence of all parties.

m.    Quantum, if any.

n.    Medical causation.

o.    Whether the plaintiff was injured.

p.    If injured, whether the plaintiff continued beyond his
      release to return to full employment some two (2)
      months after the allege accident.

q.    The physical and mental condition of James McDaniel
      before July 29, 1999.

r.   The work history of James McDaniel before July 29, 1999.

s.   The jobs and earnings to be expected from James McDaniel since July 29, 1999 and into the future.

t.   Mitigation of damages.

u.   Whether the plaintiff's intoxication and subsequent incarceration for a period of nine months caused and/or contributed to the medical problems of which he now complains.

v.   Whether plaintiff boarded the M/V CANDY STORE, performed the necessary work and returned to the adjacent rig without any mention of any accident or injury.

9.

### CONTESTED ISSUES OF LAW

a.   Whether plaintiff's claim is governed by standards of ordinary negligence.

b.   Whether the plaintiff must prove that his accident and injuries were proximately caused by the alleged accident.

c.   Comparative fault of James McDaniel and standard of care owed by James McDaniel.

d.   Any other issues inherent in the Contested Issues of
Fact above.

10.

**EXHIBITS**

**Plaintiff:**

1.   Damage Injury Report Form of Candy Fleet Corporation.

2.   Diamond Offshore Drilling Injury or Illness Report.

3.   Specifications of vessel and photograph of Candy Fleet
Corporation Crew/Supply Vessel.

4.   Candy Fleet Corporation Safety Manual.

5.   Daily Master's Logs of Candy Fleet Corporation.

6.   Licensure of Glenn Snelling.

7.   Social Security records.

8.   Internal Revenue Service tax returns.

9.   Personnel records of Diamond Offshore, including a pre-
employment physical.

10.   Medical records of Lake Charles Memorial Hospital.

11.   Medical records of Westbank Surgical Clinic.

12.   Medical records of Dr. David Roberts.

13.   Medical records of Hancock Medical Center.

14.   Medical records of Dr. William S. Fleet.

15.   Medical records of Rehab Services of Mississippi.

16.   Medical records of Dr. Harry Danielson.

17.   Medical records of Hoda Chiropractic Clinic.

18.   Medical records of Open MRI.

19.   Medical records of Gulfport Memorial.

20.   Any exhibit listed or used by any other party.

**Defendant:**

1.    Candy Fleet's Damage/Injury Report.

2.    Diamond Offshore's Injury or Illness Report.

3.    Photograph and description of the M/V CANDY STORE.

4.    Daily Master's Logs of the M/V CANDY STORE.

5.    Candy Fleet Corporation's Safety Manual.

6.    Certificates of Documentation of the M/V CANDY STORE.

7.    Certificate of Inspection of the M/V CANDY STORE.

8.    Master's License of Glenn Snelling.

9.    Social Security Earning's Statement of James McDaniel.

10.   Income Tax Records of James McDaniel.

11.   Any and all medical records of James McDaniel,
      including but not limited to:

      a.    Rehab Services of Mississippi.

      b.    Westbank Surgical Clinic.

      c.    Hancock County Justice Facility.

      d.    Hoda Chiropractic Clinic.

      e.    Dr. William S. Fleet.

      f.    Dr. David Roberts.

g.   Hancock Medical Center.

h.   Lake Charles Memorial.

i.   Dr. Harry Danielson.

j.   Open MRI, Inc.

k.   Memorial Hospital.

12.  Any and all employment records of James McDaniel, including but not limited to:

a.   Diamond Offshore Company.

b.   Southern Erectors, Inc.

13.  Any criminal and/or civil records concerning James McDaniel.

(Objection: Non-specific, irrelevant, prejudicial, and potentially impeachment (non-substantive evidence.)

14.  Surveillance tapes.

(Plaintiff reserves the right to object to this exhibit if and when it is produced.)

11.

## DEPOSITION TESTIMONY

### Plaintiff:

Eugene Platt (deposition).

Dr. Harry Danielson (deposition).

Dr. William S. Fleet (deposition).

### Defendant:

Defendant, Candy Fleet Corporation, reserves the right to use the deposition testimony of any witness unavailable for trial and/or not within the subpoena power of this Honorable Court.

12.

### CHARTS, GRAPHS, MODELS, SCHEMATIC DIAGRAMS

Plaintiff may employ charts, graphs, models, schematic diagrams, and similar objects in opening and closing arguments. Plaintiff may produce blow-ups of exhibits for use in open and closing statements.

Defendant, Candy Fleet Corporation, reserves the right to use charts, graphs, blackboards, or models or similar objects in opening and closing arguments.

13.

### WITNESSES

**Plaintiff:**

Plaintiff, James McDaniel, will/may call the following witnesses at the trial of this matter.

**WILL CALL**

1.  Dr. Harry Danielson
    4226 Central Street
    Gulfport, Mississippi    39501
    228-867-6000
    Neurosurgeon who performed surgery on plaintiff's neck
    by video deposition.

2.  Tom Stewart, vocational expert
    Post Office Box 1482
    Picayune, Mississippi 39466
    601-798-1731
    Impact of injury on plaintiff's marketability
    and earnings potential.

3.  Dr. Semoon Chang, Economist
    1100 Carolina Court
    Mobile, Alabama    36695
    251-460-7388
    Compilation of earnings loss.

4.  Eugene Platt (by deposition)
    7940 West South Street
    Citronelle, Alabama    36522
    334-866-2160
    Engineer on vessel who experienced impact,
    knowledge of mate's skill level, knowledge of
    plaintiff's injuries.

5.  James McDaniel
    18417 Fenton Dedeoux Road
    Kiln, MS 39556
    Background, operative facts of accident, damages.

**MAY CALL**

1.  Nancy Necaise
    18417 Fenton Dedeoux Road
    Kiln, MS 39556
    Plaintiff's condition and activities before and
    after the accident.

2.  Troy Hebert
    Plaintiff's supervisor on OCEAN CRUSADER 152

3.   Chris (roustabout)
     OCEAN CRUSADER 152 crew member.

4.   Glenn Snelling (mate at wheel of Candy Store)
     Operation of vessel at the time of the incident, skill
     level.

5.   Captain Daniel Miller
     12705 Clearcreek Road
     Youngstown, Florida  32466
     Operation, activity and facts surrounding accident
     occurrence.

6.   Westbank Surgical Clinic, Dr. Richard Wei.
     4476 Westbank Expressway
     Marrero, Louisiana 70072
     504-347-8471
     Company physician, treatment from August 3-September
     15, 1999.

7.   Dr. David F. Roberts
     Diamondhead Family Medicine
     Post Office Box 6130
     Diamondhead, Mississippi 39525
     General physician who saw plaintiff in Mississippi
     and referred him for MRI.

8.   Dr. William S. Fleet
     3401 Medical Park Drive, Building 3, Suite 105
     Mobile, Alabama   36693
     251-661-9587
     Neurologist who saw plaintiff on December 29, 1999 and
     referred for MRI.

9.   Calvin Dodd (roustabout)
     Diamond Offshore Drilling, Inc. employee
     concerning accident and injuries to plaintiff.

10.  Robert Keller
     Crew member of the OCEAN CRUSADER 152 regarding
     operation, accident and injuries.

11.  Randy Walton, safety representative
     Accident report for plaintiff.

12.  David Ellingburg
     Diamond Offshore
     111 Veterans Blvd., Suite 1030
     Metairie, Louisiana 70005
     1-800-835-9040
     Claims representative of Diamond Offshore
     Re: Medicals paid.

13.  George Spring
     Crew member (DIM) OCEAN CRUSADER 152.

14.  W. W. Forrester
     Operator's representative on OCEAN CRUSADER  152.

15.  Hoda Chiropractic Clinic, Dr. Hoda
     4349 Gex Road
     Bay St. Louis, Mississippi 39525
     Plaintiff's health before accident and after accident.

16.  Dallas Raybon
     Deckhand on the M/V CANDY STORE.

17.  Lance Bryan

18.  Any witness listed or called by any other party.

**Defendant:**

    Defendant will/may call the following witnesses at the trial
of this matter:

    WILL CALL:

1.  Melvin Parnell, M.D.
    4224 Houma Boulevard, Suite 205
    Metairie, Louisiana 70006
    Medical expert.

2.  Kenneth Boudreaux, Ph.D.
    1424 Bordeaux Street
    New Orleans, Louisiana 70115

    Economic expert.

3.   Mary Elvir
     5020 Utica Street
     Metairie, Louisiana    70006

     Vocational Rehabilitation expert.

MAY CALL:

1.   James McDaniel, under cross-examination

2.   Meyer Nelkin
     Candy Fleet Corporation
     1207 Front Street
     Morgan City, Louisiana 70381

     Facts and circumstances surrounding the incident in
     litigation, the job responsibilities of plaintiff,
     repairs performed on the M/V CANDY FLEET, the
     experience of plaintiff and maintenance and cure.

3.   Kenny Nelkin
     Candy Fleet Corporation
     1207 Front Street
     Morgan City, Louisiana 70381

     Facts and circumstances surrounding the incident in
     litigation, the job responsibilities of plaintiff,
     repairs performed on the M/V CANDY FLEET, the
     experience of plaintiff and maintenance and cure.

4.   Steve Marcrum
     Candy Fleet Corporation
     1207 Front Street
     Morgan City, Louisiana    70381

     Facts and circumstances surrounding the incident in
     litigation, the job responsibilities of plaintiff,
     repairs performed on the M/V CANDY FLEET, the
     experience of plaintiff and maintenance and cure.

5.  Tom Kellum
    Tom Kellum & Associates
    Post Office Box 548
    Metairie, Louisiana    70004

    Facts and circumstances surrounding the incident in
    litigation, the job responsibilities of plaintiff and
    maintenance and cure.

6.  Daniel Miller
    1212 Ethlyn Road, Lot 6
    Panama City, Florida    32401

    Facts and circumstances surrounding the incident in
    litigation and the duties of crewmembers.

7.  Troy Hebert
    Plaintiff's supervisor on OCEAN CRUSADER 152.

    Facts and circumstances surrounding the incident in
    litigation and plaintiff's employment with Diamond
    Offshore.

8.  Chris (Roustabout)
    OCEAN CRUSADER  152 crewmember

    Facts and circumstances surrounding the incident in
    litigation and plaintiff's employment with Diamond
    Offshore.

9.  Glenn Snelling
    (Mate at wheel of CANDY STORE)
    Operation of vessel at the time of the incident, skill
    level.

    Facts and circumstances surrounding the incident in
    litigation and the duties of crewmembers.

10. Calvin Dodd (Roustabout)
    Diamond Offshore Drilling, Inc. employee.

    Facts and circumstances surrounding the incident in
    litigation and plaintiff's employment with Diamond
    Offshore.

11.    Robert Keller
       Crewmember of the OCEAN CRUSADER 152.

       Facts and circumstances surrounding the incident in
       litigation and plaintiff's employment with Diamond
       Offshore.

12.    George Spring
       Crewmember (DIN) OCEAN CRUSADER 152.

       Facts and circumstances surrounding the incident in
       litigation and plaintiff's employment with Diamond
       Offshore.

13.    W. W. Forrester
       Operator's representative on OCEAN CRUSADER 152.

       Facts and circumstances surrounding the incident in
       litigation and plaintiff's employment with Diamond
       Offshore.

14.    Dallas Raybon
       Deckhand on the M/V CANDY STORE.

       Facts and circumstances surrounding the incident in
       litigation and the duties of crewmembers.

15.    Investigator.

       Testimony regarding investigation and surveillance of
       plaintiff and authentication of video surveillance
       tapes.

16.    Lance Bryan

       Facts and circumstances surrounding the incident in
       litigation and plaintiff's employment with Diamond
       Offshore.

17.    Dr. Richard Tsao Wei
       Westbank Surgical Clinic
       4475 Westbank Expressway
       Marrero, Louisiana 70072

       Medical expert.

18.  Dr. David Roberts
     Post Office Box 6130
     Diamondhead, Mississippi 39525

     Medical expert.

19.  Dr. William S. Fleet
     Building 3, Suite 105
     3401 Medical Park Drive
     Mobile, Alabama 36693

     Medical expert.

20.  Any other witness listed or called by any other party.


                          14.


a.   This is a jury case.  Jury trial is applicable to
     all aspects of the case.

     Proposed jury instructions, special
     jury interrogatories, trial
     memoranda and any special questions
     that the Court is asked to put to
     prospective jurors on voir dire
     shall be delivered to the Court and
     opposing counsel not later than
     five working days prior to the
     trial date, unless specific leave
     to the contrary is granted by the
     Court.


                          15.


The issue of liability (will or will not) be tried

separately from that of quantum.


                          16.


                    **OTHER MATTERS**


None.

17.

Trial will commence on December 3, 2001, at 8:30 a.m.   Trial
will last at least three days.

18.

This Pre-Trial Order has been formulated after conference at
which counsel for the respective parties have appeared in person.
Reasonable opportunity has been afforded counsel for corrections,
or additions, prior to signing.   Hereafter, this Order will
control the course of the trial, and may not be amended except by
consent of the parties and the Court, or by order of the Court to
prevent manifest injustice.

19.

Possibility of settlement of this case was considered.
New Orleans, Louisiana, this 15th day of November, 2001.

_____
UNITED STATES DISTRICT JUDGE

DAVID A. HILLEREN (#6921)
BILLY WRIGHT HILLEREN (#22428)
Post Office Box 9150
Mandeville, Louisiana   70470
Telephone: (985) 893-5959
Fax:        (985) 893-5059
Attorney for Plaintiff,
James McDaniel

DANIEL E. KNOWLES, III (7760)
BRIEN J. FRICKE (#20546)
1100 Poydras Street
Suite 2000
New Orleans, LA 70163-2000
Telephone: (504)569-2900
Fax:        (504)569-2099
Attorneys for Candy Fleet
Corporation